IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHANTEL BARLOW-GRAHAM,**<br><br>**PLAINTIFF,**<br>v.<br><br>**VERSANT HEALTH, INC.,**<br><br>**DEFENDANT.** | **Civil Action No.:** _____<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT AND JURY DEMAND

Plaintiff Chantel Barlow-Graham, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

### PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Chantel Barlow-Graham, a former employee of Versant Health, Inc. ("Versant" or the "Company"). Ms. Barlow-Graham has been harmed by Defendant's discrimination based on her disabilities or perceived disabilities, culminating in her wrongful termination on October 3, 2019.

2. This action arises pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

### JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be

commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On March 27, 2020, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On October 6, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff.[1]

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by and terminated by Defendant in this judicial district.

## PARTIES

9. Plaintiff Chantel Barlow-Graham is an adult female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10. Ms. Barlow-Graham is a qualified individual with disabilities within the meaning of the ADA.

---

[1] It has been less than one year since Ms. Barlow-Graham dual-filed her Charge of Discrimination as a Complaint with the PHRC for Defendant's violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Barlow-Graham will seek to amend her Complaint in this matter to add her PHRA claims once she has exhausted her administrative remedy with respect to those claims.

11. Ms. Barlow-Graham suffers from pulmonary embolisms and adenomyosis.

12. Ms. Barlow-Graham has had her disabilities for a period far in excess of six months.

13. Ms. Barlow-Graham's disabilities affects one or more major bodily functions and substantially limit one or more major life activities.

14. Defendant Versant Health is a Delaware corporation with its headquarters in New York and a facility located in Newtown Square, Pennsylvania, where Plaintiff was employed.

15. At all relevant times, upon information and belief, Defendant is and has been an employer employing more than 500 employees.

16. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

17. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of employment under the direct control of Defendant.

18. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

19. At all relevant times hereto, Plaintiff Chantehantl Barlow-Graham was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

21. During her employment, Defendant regarded Ms. Barlow-Graham as disabled.

22. This cause of action arose out of transactions or occurrences that took place in whole or in part in Newtown Square, Pennsylvania.

23. Defendant Versant Health does significant business within the Commonwealth of Pennsylvania.

24. This Honorable Court has jurisdiction over Defendant.

## FACTS

25. Versant Health is a managed vision care company that was formerly known as Davis Vision.

26. Ms. Barlow-Graham was hired as a Lab Technician for Versant Health on or about July 12, 2019.

27. Prior to beginning her employment with Versant, Ms. Barlow-Graham was diagnosed with a pulmonary embolism, for which she requires medication.

28. Ms. Barlow-Graham also suffers from adenomyosis, a medical condition that causes severe pain for one to two days each month.

29. Ms. Barlow-Graham attended orientation on August 5, 2019 and began her employment with Versant on or about August 8, 2019.

30. From the beginning of her employment, Ms. Barlow-Graham was an excellent and hardworking employee.

31. Despite her loyalty and consistent performance, Ms. Barlow-Graham was discriminated against on the basis of her disabilities and/or perceived disabilities, and was wrongfully terminated as a result of such discrimination.

32. Ms. Barlow-Graham was slightly late on two days in the first two months of her employment due to unexpected car troubles of individuals with whom she was carpooling to work.

33. Specifically, on or about August 23, 2019, Ms. Barlow-Graham was 18 minutes late for work due to these car issues.

34. Again, approximately one month later, on or about September 19, 2019, Ms. Barlow-Graham was approximately ten minutes late for work due to these same car issues.

35. Ms. Barlow-Graham was not written up for either late arrival and neither were the co-workers she was carpooling with.

36. On or about August 31, 2019, Ms. Barlow-Graham left work early, at approximately 5:18 p.m., having received express permission to do so from Derrick Ireola, Lab Supervisor for Defendant.

37. Ms. Barlow-Graham had requested to go home early due to her medical condition of adenomyosis, which caused Ms. Barlow-Graham severe pain and vomiting.

38. Mr. Ireola gave Ms. Barlow-Graham permission to leave early from work that day, but requested that she bring a note verifying her condition and symptoms.

39. Ms. Barlow-Graham called her physician's office requesting such a note, but her doctor stated that the office would only provide a note if she went to the office for a scheduled appointment.

40. Ms. Barlow-Graham then made an appointment to see the physician, which was scheduled for October 2, 2019.

41. Ms. Barlow-Graham relayed all this information to Mr. Ireola, who assured her that everything was fine and that she did not need the note.

42. Again, Ms. Barlow-Graham was not written up for having left early due to her illness or for her failure to immediately provide a note.

43. During the week of September 13, 2019, Ms. Barlow-Graham informed Mr. Ireola that she was feeling funny, as the medication which she regularly took due to the pulmonary embolism was on backorder and she had not taken it that day.

44. Almost two weeks later, Mr. Barlow-Graham's medication was still on backorder.

45. On September 26, 2019, Ms. Barlow-Graham was dizzy and short of breath, and was rushed to the Emergency Room.

46. Ms. Barlow-Graham relayed to the EMTs that she had not yet received her medication for pulmonary embolism, which was still on backorder. Mr. Ireola heard the entire conversation.

47. After having been rushed to the Emergency Room on Thursday, September 26, 2019, Ms. Barlow-Graham was instructed by her physician not to return to work until Saturday, September 28, 2019.

48. Ms. Barlow-Graham provided Defendant the ordering physician's note regarding her condition and directive that she take the following day off.

49. Upon returning to work on Saturday, September 28, 2019, Ms. Barlow-Graham was told by Mr. Ireola's supervisor that she was not permitted to talk on her phone while working on the floor.

50. Ms. Barlow-Graham, however, had not been talking on her phone. She had been listening to music on her phone, and singing along, which is permissible.

51. On October 2, 2019, Ms. Barlow-Graham attended her physician's office for a visit, as previously scheduled, and obtained a note from her physician regarding her adenomyosis.

52. The notes certified that Ms. Barlow-Graham went to the office on October 2, 2019 for her recurring medical condition, and that such condition could cause her to miss work for approximately 1-2 days per month. Ms. Barlow-Graham provided this note to Defendant.

53. The very next day, on Thursday, October 3, 2019, after being at work for approximately two hours, Ms. Barlow-Graham was terminated.

54. The alleged grounds for Mr. Barlow-Graham's termination were lateness, lack of a note for leaving early on August 31, 2019, and for being on her phone on September 28, 2019.

55. These reasons were merely pretext for the real reason for Ms. Barlow-Graham's termination – discrimination.

56. Throughout her entire employment with Defendant, until her termination on October 3, 2019, Ms. Barlow-Graham had never been informed that she had violated any policy.

57. Ms. Barlow-Graham had never been written up or received any warnings regarding lateness or leaving early.

58. In fact, Mr. Ireola had explicitly informed Ms. Barlow-Graham that she was permitted to leave early on August 31, 2019, and did not need a note.

59. With regard to her alleged policy violation of speaking on the phone, Ms. Barlow-Graham had not been speaking on the phone, but had been listening to music, which was permissible.

60. The grounds for Ms. Barlow-Graham's termination are further suspicious as they directly contradict the Attendance Policy of Defendant.

61. According to the Attendance Policy, three (3) unexcused occurrences in a thirty (30) day period would equal a verbal write up. An additional three (3) unexcused absences within that time period would result in an additional write up.

62. Ms. Barlow-Graham was late on August 23, 2019 and September 19, 2019. She left early on August 31, 2019 due to her medical condition, but received express consent to leave early from Mr. Ireola, and further, provided a doctor's note regarding her medical condition.

63. Thus, Ms. Barlow-Graham did not even meet the threshold of three (3) unexcused occurrences in a thirty (30) day period, which should only have resulted in a write up.

64. Indeed, Ms. Barlow-Graham was never written up for these minor infractions.

65. Notwithstanding the foregoing, Defendant terminated her based on her alleged absenteeism and/or tardiness.

66. The timing of Ms. Barlow-Graham's termination, which occurred immediately after she had been rushed to the Emergency Room and subsequent doctor's visit and note, coupled with Defendant's unjustified grounds for her termination, indicates that Ms. Barlow-Graham's termination was the result of discrimination on the basis of her disabilities and/or perceived disabilities.

67. Defendant discriminated against Ms. Barlow-Graham because of her disabilities or perceived disabilities in violation of the ADA.

68. Ms. Barlow-Graham has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

69. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Barlow-Graham severe emotional distress.

70. Ms. Barlow-Graham has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

### COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

71. Plaintiff Chantel Barlow-Graham repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

72. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

73. In discriminating against Ms. Barlow-Graham on the basis of her disabilities and/or because Defendant regarded Ms. Barlow-Graham as disabled, Defendant violated the ADA.

74. Said violations were intentional and willful.

75. Said violations warrant the imposition of punitive damages.

76. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Chantel Barlow-Graham has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

### PRAYER FOR RELIEF

77. Plaintiff Chantel Barlow-Graham repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Chantel Barlow-Graham respectfully requests that this Court enter judgment in her favor and against Defendant and Order:

a.  Appropriate equitable relief;

b.  Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination;

c.  Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d.  Defendant to pay Plaintiff punitive damages;

e.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendant to pay Plaintiff's costs of bringing this action and her attorneys' fees;

g.  Plaintiff be granted any and all other remedies available pursuant to the ADA; and

h.  Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Chantel Barlow-Graham hereby demands trial by jury as to all issues so triable.

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff*

Dated: December 31, 2020